**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------- x
CARRIE HOLMQUIST STANLEY,          :
                                   :
          Plaintiff,               :
                                   :
                                   :
                                   :
                                   :
                                   :
v.                                 :
                                   :  Civil No. 3:24-cv-1250 (AWT)
VERMONT MUTUAL INSURANCE           :
COMPANY,                           :
                                   :
          Defendant.               :
                                   :
                                   :
                                   :
                                   :
-------------------------------- X
```

<u>**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**</u>

Plaintiff Carrie Holmquist Stanley brings this action against defendant Vermont Mutual Insurance Company ("Vermont Mutual"), seeking a declaratory judgment that Vermont Mutual has a duty to defend and a duty to indemnify her against any and all claims brought against her in a lawsuit pending in Connecticut Superior Court.

The parties have filed cross-motions for summary judgment. Stanley moves for partial summary judgment, i.e., with respect to the duty to defend but not with respect to the duty to indemnify. <u>See</u> Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (ECF No. 29) at 1 n.1 ("Pl. Memo.").

Vermont Mutual moves for summary judgment with respect to both the duty to defend and the duty to indemnify. <u>See</u> Memorandum of Vermont Mutual Insurance Company in Support of its Motion for Summary Judgment (ECF No. 28-1) ("Def. Memo.").

For the reasons set forth below, the plaintiff's motion is being denied and the defendant's motion is being granted.

## I.    FACTUAL BACKGROUND

### A. <u>The Insurance Policies</u>

Vermont Mutual issued to Stanley, as the named insured, a Homeowners Policy under policy number HO12446153 for the policy period of September 11, 2020 to September 11, 2021 with personal liability limits of $1,000,000 per occurrence. That policy was subsequently renewed by a series of policies having consecutive policy periods covering from September 11, 2021 to September 11, 2024. The subsequent policies were as follows: policy number HO12446153 (policy period of September 11, 2021 to September 11, 2022); policy number HP00128873 (policy period of September 11, 2022 to September 11, 2023); and policy number HP00128873 (policy period of September 11, 2023 to September 11, 2024). The Homeowner Policies are identical in all respects that are material to the instant cross-motions for summary judgment. Consequently, the court refers to them collectively as the "Insurance Policy." When quoting or citing to the Insurance

Policy, the court cites to the version found at ECF No. 28-2, page 2 of 177 to page 28 of 177.

The Insurance Policy has a number of parts. One part contains the "Major Policy Provisions." See ECF No. 28-2 at 6 to 23. Immediately after the Declarations page is a list of forms and endorsements that are made a part of the Insurance Policy. See ECF No. 28-2 at 5. At issue in this case is the Homeowners Coverage Enhancement Amendment-Connecticut. See ECF No. 28-2 at 25 to 28 (the "Enhancement Amendment").

The Major Policy Provisions of the Insurance Policy includes the following defined terms:

> 1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results. . . .
>
> 5.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:
>
>> a. "Bodily injury"; or
>> b. "Property damage."

Insurance Policy at 6. That section of the Insurance Policy also states:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

Insurance Policy at 17.

The Enhancement Amendment changes the coverage by amending the definition of "bodily injury," as follows:

SECTION II LIABILITY COVERAGES
COVERAGE E Personal Liability

Personal Injury Coverage

The definition of "bodily injury" is amended to include "personal injury".

"Personal Injury" means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, malicious prosecution;

2. Libel, slander or defamation of character; or

3. Invasion of privacy, wrongful eviction or wrongful entry.

Insurance Policy at 27. The Enhancement Amendment contains two exclusions with respect to coverage for "personal injury" that are at issue in the instant cross-motions, a penal law exclusion and a business exclusion. The Enhancement Amendment reads, in relevant part, as follows:

-4-

Section II Exclusions [in the Major Policy Provisions] do not apply to "personal injury". "Personal injury" insurance does not apply to:

1. . . .

2. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any "insured";

3. . . .

4. Injury arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business"[.]

Insurance Policy at 27 to 28.

In the Major Policy Provisions, the term "business" is defined as follows: "'Business' includes trade, profession or occupation." Insurance Policy at 6.

B. **The Underlying Lawsuit**

On June 5, 2024, Stanley tendered a demand for Vermont Mutual to defend and indemnify her against claims in Jane Doe, et al. v. Carrie Holmquist Stanley, et al., Connecticut Superior Court, Judicial District of New Haven, Docket No. NNH-CV-24-5060008-S (the "Underlying Lawsuit"). In the Underlying Lawsuit, Jane and John Doe (the "Does") assert claims against Stanley and Yale-New Haven Hospital ("Yale-New Haven"), where Stanley was employed as a clinical social worker from 2017 until February of 2023. See Plaintiff's Local Rule 56(a)(2) Statement of Facts in

-5-

Opposition to Summary Judgment (ECF No. 33) ¶ 11 ("Pl. 56(a)2

Statement"). The claims against Stanley are for invasion of

privacy, violation of Conn. Gen. Stat. § 19a-583, negligence,

and negligent infliction of emotional distress.

The Does allege in the Underlying Lawsuit that beginning in

2020, both Does were patients at Yale-New Haven, and that in

2021 the Does began in vitro fertilization treatments. The Does

allege that Yale-New Haven maintained their confidential patient

information electronically, so it could be retrieved and

reviewed on its computer system; this included information about

their fertility treatments.

The Does allege that Stanley accessed and viewed their

confidential patient information concerning their fertility

treatments. They allege that Stanley did so using the electronic

medical records system maintained by and the credentials

provided to her by Yale-New Haven. They also allege that when

Stanley accessed the Does' information, she did so during work

hours.[1] In addition, the Does allege that Stanley did not have

---

[1] The plaintiff objects to this statement in paragraph 17 of the Defendant's Local Rule 56(a)1 Statement and contends that the defendant improperly relies on extrinsic evidence outside the allegations made by the Does in the Underlying Lawsuit. Pl. 56(a)2 Statement ¶ 17. See Misiti, LLC v. Travelers Prop. Cas. Co. of Am., 308 Conn. 146, 161 (2013) ("[T]he duty to defend must be determined by the allegations set forth in the underlying complaint itself, with reliance on extrinsic facts being permitted only if those facts support the duty to defend." (citation omitted)). However, the Does allege: "At all times relevant herein, the defendant, Carrie Holmquist Stanley[] . . . was able to access, view, and retrieve [the Does'] confidential, private and sensitive patient information . . . during her work hours." Underlying Complaint, Def. Memo., Exhibit 3 (ECF No. 28-2) at 2, 55 (emphasis added).

authorization from the Does to access, view, or retrieve such information and that Stanley did not provide the Does with care or treatment.

The Does allege that, sometime between 2020 and 2023, Stanley communicated and disseminated the Does' confidential patient information to people who knew the Does. The Does allege that Stanley gave publicity to the confidential and sensitive medical information about them without their consent or authorization and that this information was of no concern to the general public.

Stanley and Vermont Mutual do not dispute the following facts. John Doe is Stanley's ex-husband and Jane Doe is Stanley's ex-husband's current wife. At various points between April 2020 and February 2023, Stanley misused her work credentials to access, view, and/or retrieve certain healthcare information concerning the Does that was in Yale-New Haven's electronic patient database. Stanley communicated and/or disseminated certain healthcare information that she learned about the Does to two other individuals. At the time she communicated and/or disseminated this healthcare information about the Does, Stanley was not at Yale-New Haven or any of its facilities. Rather, Stanley disclosed such information from her

---

Therefore, the court considers paragraph 17 of the Defendant's Local Rule 56(a)1 Statement.

-7-

own residence. On one occasion, Stanley disclosed the Does' information via a social media messenger application that she utilized from her personal cell phone while at her residence. On another occasion, Stanley disclosed the Does' information to a second individual via a telephone conversation she had on her personal cell phone while at her residence.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial factual disputes will not prevent summary judgment.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (alteration in original)). Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

**III. DISCUSSION**

Both parties have moved for summary judgment with respect to Vermont Mutual's duty to defend Stanley. Stanley contends that the Underlying Lawsuit "contains allegations against Stanley that potentially could fall within the scope of coverage afforded by the [Insurance Policy]" because Stanley's alleged conduct constitutes an "occurrence" and neither the penal law exclusion nor the business exclusion is applicable. Pl. Memo. at 1-2. Vermont Mutual contends it does not owe Stanley a duty to defend as Stanley's alleged conduct is not an "occurrence," under the definition of that term in the Major Policy Provisions, because it is not an accident, and because coverage is excluded by the penal law exclusion and also by the business exclusion.

As discussed below, Stanley's conduct is not an occurrence, under the definition of that term in the Major Policy Provisions because it is not an accident, but the Enhancement Amendment brings her conduct within the definition of an occurrence. Notwithstanding that fact, while her conduct is not excluded from coverage by the penal law exclusion, it is excluded from coverage by the business exclusion. Therefore, Vermont Mutual does not have a duty to defend Stanley in the Underlying Lawsuit, and consequently, no duty to indemnify her.

"'[A]n insurer's duty to defend, being much broader in

-10-

scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint.'" Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. All. Ins. Co., 254 Conn. 387, 398 (2000) (alterations in original) (quoting Springdale Donuts, Inc. v. Aetna Casualty & Surety Co. of Illinois, 247 Conn. 801, 807 (1999)). "'The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability.'" Id. (citations omitted). "'It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend.'" Id. (alteration in original) (citations omitted). "Indeed, '[i]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured.'" Id. at 399 (alteration in original) (quoting Moore v. Continental Casualty Co., 252 Conn. 405, 409 (2000)). "[A]ny uncertainty as to whether an alleged injury is covered works in favor of providing a defense to an insured, and uncertainty may be either factual or legal." Nash St., LLC v.

-11-

Main St. Am. Assurance Co., 337 Conn. 1, 10 (2020) (citations omitted).

"'On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend.'" Cmty. Action for Greater Middlesex Cnty., 254 Conn. at 399 (quoting Springdale Donuts, Inc., 247 Conn. at 807).

"In considering the meaning of [insurance policy] exclusions and their application to the facts, [the court is] guided by settled principles." Nationwide Mut. Ins. Co. v. Pasiak, 327 Conn. 225, 238 (2017).

> "The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . In evaluating the expectations of the parties, we are mindful of the principle that provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and that the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . [W]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses."

Id. at 238-39 (alterations in original) (quoting Vermont Mutual Ins. Co. v. Walukiewicz, 290 Conn. 582, 591-92 (2009)). "When construing exclusion clauses, 'the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the

claim.'" Id. at 239. (quoting Connecticut Ins. Guaranty Assn. v. Drown, 314 Conn. 161, 188 (2014)). "While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies." Id. (citing Capstone Building Corp. v. American Motorists Ins. Co., 308 Conn. 760, 788 n.24 (2013)).

## A. There is an "occurrence"

Vermont Mutual contends that Stanley's alleged acts do not constitute an "occurrence" because they are not an "accident." Defendant Vermont Mutual Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 31) at 6. The Major Policy Provisions define "an occurrence as an accident[] . . . which results, during the policy period, in: (a) 'Bodily injury'; or (b) 'Property damage.'" Insurance Policy at 6 (emphasis added). Vermont Mutual argues that Stanley's accessing and publishing of the Does's personal health information were intentional and, therefore, were not an "accident" within the meaning of the Insurance Policy.

The term "accident" is not defined in the Insurance Policy, but the Connecticut Supreme Court has explained that:

> "[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." We have held that "[a]n accident is an event that is unintended from the

-13-

perspective of the insured." In the context of a homeowner's insurance policy, the motive of the acting party is determinative of whether an act was intentional or accidental.

Capstone Bldg. Corp., 308 Conn. at 775 (alterations in original) (citations omitted). The alleged actions at issue, i.e., accessing and publishing the Does' personal health information, were not unintended from Stanley's perspective. See Underlying Complaint at 7 (alleging that Stanley "willfully accessed" and "willfully disclosed" the Does' confidential medical information). This is not a situation where "the result would have been different had the deliberate act been performed correctly." Capstone Building Corp., 308 Conn. at 775. Because Stanley's alleged actions were intentional, they are not an "accident." But the fact that they are not an accident does not mean that they are not an occurrence.

The definition of "bodily injury" is amended in the Enhancement Amendment to include "personal injury." Insurance Policy at 27. "Personal injury" is defined as

injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, malicious prosecution;

2. Libel, slander or defamation of character; or

3. Invasion of privacy, wrongful eviction or wrongful entry.

Id. Given that the Enhancement Amendment provides coverage for

-14-

these "offenses," Stanley argues that requiring an "occurrence" to be accidental, unexpected, or unintended "would render coverage for invasion of privacy claims under the [Enhancement Amendment] illusory, at worst, and ambiguous, at best." Pl. Memo. at 18. The court agrees.

The analysis in Imperial Cas. & Indem. Co. v. State, 246 Conn. 313 (1998), is instructive. The policy at issue there also defined "occurrences" as "accidents." The court concluded:

> Although by defining an occurrence as "an accident" the policy attempts to limit coverage to conduct that is unintentional, this definition, when read in conjunction with the definition of personal injury, gives rise to an internal inconsistency. Specifically, the definition of personal injury indicates that certain injuries may be covered that could have resulted only from intentional conduct, such as false arrest, false imprisonment, [and] malicious prosecution . . . , as well as many injuries that generally involve intentional conduct, such as assault and battery, libel, slander, [and] defamation,. . . . The definition of occurrence as "an accident," however, appears to encompass only unintentional conduct. The result is that the policy purports to provide coverage for accidental, intentional torts—torts that, of course, do not exist. . . .
>
> . . . [T]he interpretation of the policy language is to be informed by what the parties likely intended in entering the contract. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . .
>
> If we were to interpret the policy as the plaintiff suggests, . . . coverage for damages resulting from several intentional causes of action--such as false arrest, false imprisonment, [and] malicious prosecution[] . . .--would be excluded even though the policy purports to provide coverage for personal injuries resulting from those causes

of action. The latter result hardly seems rational, and we have difficulty imagining that the defendants could have intended to purchase a policy of insurance that excluded such coverage. Our consideration of the parties' intent in entering the contract, therefore, provides a compelling reason to interpret the inconsistent policy language as including coverage for intentional acts.

A further reason to interpret the inconsistent policy language as encompassing intentional conduct is the general rule that ambiguous provisions in a contract are to be interpreted against the drafter. This rule applies to contracts of insurance[.]

Id. at 327-29 (internal quotation marks and citations omitted).

Similarly, Stanley's purchase of the Enhancement Amendment would only have been rational if she intended to receive coverage for injuries that arose out of any of the "offenses," all of which involve intentional conduct and most of which are specifically addressed in Imperial, and any ambiguity must be interpreted against Vermont Mutual.

B. **The Penal Exclusion**

Vermont Mutual contends that the exclusion for "[i]njury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of any 'insured'" applies because the Does allege in the Underlying Lawsuit that Stanley violated Conn. Gen. Stat. § 19a-583. Insurance Policy at 28. Section 19a-583 provides: "No person who obtains confidential HIV-related information may disclose or be compelled to disclose such information, [subject to certain exceptions.]" Any person who "wilfully violates" section 19a-583 "shall be liable in a

-16-

private cause of action for injuries suffered as a result of such violation." Conn. Gen. Stat. § 19a-590. The Insurance Policy does not define the term "penal law." Vermont Mutual, relying on Black's Law Dictionary (12th ed. 2024), argues that Section 19a-583 is a penal law. Black's Law Dictionary defines a "penal law" as "'[a] statute by which punishments are imposed for transgressions of law, civil as well as criminal; esp., a statute that defines a crime and prescribes its corresponding fine, penalty, or punishment'". Black's Law Dictionary (12th ed. 2024). Vermont Mutual only quotes the first clause of this definition.

In Wilderman v. Powers, the court held that an exclusion for "injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured," 110 Conn. App. 819, 824 (2008), was applicable because "the conduct of the [insured], as alleged in the [underlying] complaint, was criminal in nature." Id. at 832. There the conduct of the insured resulted in, inter alia, him being "arrested for several crimes", "enter[ing] a guilty plea to a charge of disorderly conduct", and being "sentenced . . . to a period of incarceration of ninety days, execution suspended, and a period of eighteen months of probation with special conditions[.]" Id. at 830-32. Here the Does do not allege in the Underlying Lawsuit, nor does Vermont Mutual contend, that

-17-

Stanley's conduct was criminal in nature. Nothing in Wilderman suggests that under Connecticut law the term "penal law or ordinance" in an insurance contract encompasses conduct that is not criminal in nature, and the part of the definition in Black's Law Dictionary relied on by Vermont Mutual is not persuasive authority on this point. Therefore, the court concludes that Stanley's alleged conduct is not covered by the penal law exclusion.

C. **The Business Exclusion**

Vermont Mutual contends that the exclusion for personal injuries that are an "[i]njury arising out of or in connection with a 'business' engaged in by an 'insured'" applies. Insurance Policy at 28. The term "'[b]usiness' includes trade, profession or occupation.'" Id. at 6.

The phrase "arising out of" is not defined. But in Nationwide Mut. Ins. Co. v. Pasiak, the Connecticut Supreme Court explained:

> The meaning of "arising out of" in the context of insurance policies was already well established when this court first defined business pursuits. In Hogle v. Hogle, 167 Conn. 572, 577 (1975), this court explained that "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the [specified subject] in order to meet the requirement that there be a causal relationship between the accident or injury and the [subject]." See also Misiti, LLC v. Travelers Property Casualty Co. of America, 308 Conn. 146, 158 (2013) (recognizing that definition in Hogle applies outside of motor vehicle context). This court has described the

-18-

definition in <u>Hogle</u> as "expansive," underscoring that it is less demanding than the standard for proximate cause. <u>New London County Mutual Ins. Co. v. Nantes</u>, 303 Conn. 737, 759 (2012) <u>accord</u> <u>Board of Education v. St. Paul Fire & Marine Ins. Co.</u>, 261 Conn. 37, 48 (2002); <u>see</u> <u>also</u> <u>Fibreboard Corp. v. Hartford Accident & Indemnity Co.</u>, 16 Cal. App. 4th 492, 504 (1993) (citing same definition and noting that "'[a]rising out of' are words of much broader significance than 'caused by'"); <u>Metropolitan Property & Casualty Ins. Co. v. Fitchburg Mutual Ins. Co.</u>, 58 Mass. App. 818, 820-21 (2003) ("[t]he terms 'arising out of' and 'in connection with' are not be to be construed narrowly but are read expansively in insurance contracts"); <u>United States Fire Ins. Co. v. New York Marine & General Ins. Co.</u>, 268 App. Div. 2d 19, 21-22 (2000) ("when used in automobile exclusion clauses, the words arising out of the . . . use are deemed to be broad, general, comprehensive terms, ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle" (internal quotation marks omitted)).

327 Conn. 225, 244-45 (2017) (alterations in original).

In <u>Pasiak</u>, the court explained further:

[E]ven when no business purpose reasonably could motivate or be furthered by the action, use of the employment relationship or status to effectuate the harmful act may provide the requisite causal connection. Thus, sexual assaults have been deemed to arise out of a business pursuit when the employer or employee used his or her position of authority or trust attendant to that position to perpetrate the acts.

<u>Id.</u> at 250-51 (citations omitted).

The "case law indicates that the question of whether the [insured's conduct] was connected with, had its origins in, grew out of, flowed from, or was incident to his business pursuits would . . . be a factual matter." <u>Id.</u> at 245 (citing <u>inter</u> <u>alia</u> <u>Kolomiets v. Syncor International Corp.</u>, 252 Conn. 261, 265 (2000); <u>Whitney Frocks, Inc. v. Jobrack</u>, 135 Conn. 529, 534

-19-

(1949)).

Stanley contends that the facts alleged by the Does in the Underlying Lawsuit do not suggest that injury she caused arose out of her occupation. She argues that the Does allege that she did not provide any care or treatment to the Does; that she was not authorized by Yale-New Haven to view or access the Does' health information; and that she did not have any business purpose for accessing the information. Also, Stanley points out that while she accessed the Does' health information at work, she shared their information from her personal cell phone while she was at home. She then argues that the alleged injury arose out of her disclosure of the Does' information, as opposed to out of her accessing the information, because the tort of invasion of privacy requires disclosure of information. See Restatement (Second) of Torts § 652D cmt. a (1977) (invasion of privacy tort requires that "the matter is made public, by communicating it to the public at large").

Here, there is no genuine issue with respect to the fact that the Does' allegations in the Underlying Lawsuit show that Stanley used her employment status to effectuate the harmful act. Stanley was employed by Yale-New Haven as a clinical social worker. Stanley was given credentials that allowed her to access Yale-New Haven's electronic medical records system only because she was employed in that position. She used those credentials to

-20-

access that electronic medical records system and obtain
confidential patient information about the Does. She did so
during work hours. Stanley's emphasis on the fact that she
shared that information from her personal cellphone is
misplaced. As explained in Pasiak:

> Although the workplace as the locus of the injury is always
> a significant factor, as one early commentator noted:
> "There seems almost unanimous accord in the decisions that
> the location at which an act is performed is not decisive
> on the question of whether the act constitutes part of an
> excluded business pursuit. Rather, it is the nature of the
> particular act involved and its relationship, or lack of
> relationship, to the business that controls."

Id. at 247 (citation omitted). Thus, even though Stanley took
additional steps after she was no longer at work that
proximately caused the injury to the Does, as explained above,
without the access to the medical records Stanley had by virtue
of her employment by Yale-New Haven, she would not have been
able to harm the Does as alleged in the Underlying Lawsuit.

Therefore, because there is no genuine issue of material
fact as to whether the injury that Stanley caused arose out of
or in connection with a "business" in which she engaged, the
business exclusion applies, and Vermont Mutual is entitled to
summary judgment.[2]

---

[2] Stanley also contends that the causes of action in the Underlying Lawsuit
sounding in negligence and negligent infliction of emotional distress trigger
Vermont Mutual's duty to defend. She argues that the Does allege conduct on
her part in support of these negligence claims that could be construed as an
"accident". Thus, she argues, that conduct would constitute an "occurrence"
as defined in the Major Policy Provisions. Her argument does not take into

-21-

## IV. CONCLUSION

For the reasons set forth above, Vermont Mutual Insurance Company's Motion for Summary Judgment (ECF No. 28) is hereby GRANTED and the Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) is hereby DENIED. Summary judgment is granted in favor of the defendant.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 31st day of July 2026, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge

---

account the fact that this is not a situation where the result would have been different if her act had been performed correctly, see Capstone Bldg. Corp., 308 Conn. at 775, but even if one accepts arguendo Stanley's argument, the Major Policy Provisions also contain a business exclusion, and it is identical to the business exclusion contained in the Enhancement Amendment. See Insurance Policy at 17, 28.

-22-